# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

FOREST LABORATORIES, INC., FOREST )
LABORATORIES HOLDINGS, LTD., )
MERZ PHARMA GMBH & CO. KGAA, )
MERZ PHARMACEUTICALS GMBH, and )
ADAMAS PHARMACEUTICALS, INC., )
)
     Plaintiffs, )
)
v. )     Civil Action No. 14-508-LPS
)
AMNEAL PHARMACEUTICALS LLC, )
AMNEAL PHARMACEUTICALS OF NEW )
YORK, LLC, AMERIGEN )
PHARMACEUTICALS, INC., AMERIGEN )
PHARMACEUTICALS LTD., and MYLAN )
PHARMACEUTICALS, INC., )
)
     Defendants. )

## REPORT AND RECOMMENDATION

Plaintiffs Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd. (referred to herein, together with Forest Laboratories, Inc., as "Forest"), Merz Pharma GmbH & Co. KGaA, Merz Pharmaceuticals GmbH, and Adamas Pharmaceuticals, Inc. (collectively "Plaintiffs") filed the above-captioned Hatch-Waxman action against Defendants Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC, Amerigen Pharmaceuticals, Inc., Amerigen Pharmaceuticals Ltd., and Mylan Pharmaceuticals, Inc. (collectively "Defendants"). Presently before the Court is Mylan Pharmaceuticals, Inc.'s ("Mylan") Motion to Dismiss for lack of personal jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Rule 12(b)(2) Motion"). (D.I. 25) For the reasons set forth herein, the Court recommends that Mylan's Rule 12(b)(2) Motion be DENIED.

## I. BACKGROUND

### A. Procedural Posture

This action in part arises out of Mylan's submission of Abbreviated New Drug Application ("ANDA") No. 206032 to the United States Food and Drug Administration. (D.I. 1 at ¶ 45) Plaintiffs assert that Mylan's ANDA filing constitutes infringement of eight patents, all of which relate to Forest's Namenda XR® brand memantine hydrochloride extended release capsules. (*Id.* at ¶¶ 11, 29, 47)

Plaintiffs filed suit in the instant case on April 21, 2014. (*Id.* at 17) On June 11, 2014, in lieu of answering the Complaint, Mylan filed the Rule 12(b)(2) Motion, asserting that the Complaint against it should be dismissed because the Court lacks personal jurisdiction over Mylan. (D.I. 25) The Rule 12(b)(2) Motion was fully briefed as of July 10, 2014. (D.I. 48) On July 15, 2014, Chief Judge Leonard P. Stark referred the Rule 12(b)(2) Motion to the Court for resolution. (D.I. 52) At Plaintiffs' and Mylan's request, (D.I. 49, 51), the Court heard oral argument regarding the motion on September 22, 2014. (D.I. 68, hereinafter "Tr.")[1]

### B. Mylan

Mylan, a wholly owned subsidiary of Mylan, Inc., is a West Virginia corporation with its principal place of business in Morgantown, West Virginia. (D.I. 1 at ¶ 10; D.I. 27 at ¶ 5) Mylan manufacturers and/or distributes generic drugs that are sold in the United States. (D.I. 1 at ¶ 10)

---

[1]      The parties thereafter submitted several notices of supplemental authority, and responses to those notices. (D.I. 79, 80, 97, 104) Certain of these filings, (D.I. 80, 104), go well beyond citing supplemental authority, and instead include extensive argument akin to what would be found in a brief. Because the Court finds that those filings are in violation of District of Delaware Local Rule 7.1.2(b), the Court has not considered them.

It has been registered to transact business in Delaware since April 2010, and has likewise complied with similar statutory registration requirements in 21 other states. (D.I. 27 at ¶ 4; D.I. 43, ex. N)

None of Mylan's employees or officers are located in Delaware, nor does it have any offices or facilities in the State. (D.I. 27 at ¶ 3) Mylan's net sales in Delaware for 2013 are reported to be zero. (*Id.* at ¶ 4)

### C. Mylan's Other Cases in Delaware

Due in part to its role as a generic drug manufacturer, Mylan is a frequent litigant in the District of Delaware, often appearing as a defendant in ANDA litigation. (*See* D.I. 41, ex. O (listing 58 cases involving Mylan over the last 20 years in the District of Delaware)) In several of its currently pending cases, Mylan has asserted that this Court lacks personal jurisdiction over it, based on the recent holding by the Supreme Court of the United States in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ("*Daimler*"). (*See, e.g.*, Civil Action No. 14-696-GMS, D.I. 8; Civil Action No. 14-935-LPS, D.I. 10; Civil Action No. 14-820-RGA, D.I. 14; Civil Action No. 14-1278-GMS, D.I. 12)

The District Judges in two of these cases (Chief Judge Stark and Judge Gregory M. Sleet) have addressed Mylan's motion, coming to opposite conclusions as to whether the Court has general jurisdiction over Mylan after *Daimler*. *See Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*, — F. Supp. 3d. —, 2015 WL 186833, at *20 (D. Del. Jan. 14, 2015) (holding, *inter alia*, that this Court has general jurisdiction over Mylan in light of Mylan's consent); *AstraZeneca AB v. Mylan Pharms., Inc.*, — F. Supp. 3d —, 2014 WL 5778016, at *5 (D. Del. Nov. 5, 2014)

(holding the opposite). In one of these two cases, Judge Sleet certified the issue for interlocutory appellate review by the United States Court of Appeals for the Federal Circuit. *Astrazeneca AB v. Aurobindo Pharma Ltd.,* Civil Action No. 14-664-GMS, 2014 WL 7533913, at *1 (D. Del. Dec. 17, 2014).

## II.   STANDARD OF REVIEW

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). As an initial matter, if a jurisdictional defense is raised by way of a Rule 12(b)(2) motion, then the plaintiff bears the burden of showing the basis for jurisdiction. *Eastman Chem. Co. v. AlphaPet Inc.*, Civ. Action No. 09-971-LPS-CJB, 2011 WL 6004079, at *3 (D. Del. Nov. 4, 2011); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). To satisfy its burden at this stage of the litigation, in a case where the district court has not held an evidentiary hearing, the plaintiff must only establish a *prima facie* case of personal jurisdiction. *Metcalfe v. Renaissance Marine Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *Sam Mannino Enters., LLC v. John W. Stone Oil Distrib., LLC*, 26 F. Supp. 3d 482, at 485 (W.D. Pa. 2014); *Power Integrations, Inc.*, 547 F. Supp. 2d at 369. All factual inferences to be drawn from the pleadings, affidavits and exhibits must be drawn in the plaintiff's favor at this stage. *Eastman Chem. Co.*, 2011 WL 6004079, at *3; *Power Integrations, Inc.*, 547 F. Supp. 2d at 369; *Brautigam v. Priest,* No. 99-365-SLR, 2000 WL 291534, at *2 (D. Del. Mar. 2, 2000).

The Supreme Court has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131

4

S. Ct. 2846, 2853-54 (2011) (internal quotation marks and citations omitted). The Supreme Court distinguished between these concepts in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "canonical opinion" in the area of personal jurisdiction. *Daimler*, 134 S. Ct. at 754 (citation omitted)). "Specific jurisdiction" encompasses causes of action that "aris[e] out of or relate[] to the [defendant foreign corporation's] contacts with the forum." *Goodyear*, 131 S. Ct. at 2853 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "General jurisdiction" encompasses complaints arising from dealings that are distinct from the corporation's activities in the state. *Goodyear*, 131 S. Ct. at 2853-54 (citing *International Shoe*, 326 U.S. at 318); *see also Daimler*, 134 S. Ct. at 754. A court may exercise general jurisdiction over a foreign corporation only when the corporation's "'affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear*, 131 S. Ct. at 2851).

Ordinarily, "[t]o establish personal jurisdiction, the plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional." *Eastman Chem. Co.*, 2011 WL 6004079, at *3. In most cases, the Court must first consider whether the defendant's actions fall within the scope of Delaware's long-arm statute, 10 Del. C. § 3104(c). *Id.*; *Power Integrations, Inc.*, 547 F. Supp. 2d at 369. Second, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Eastman Chem. Co.*, 2011 WL 6004079, at *3 (citing *Int'l Shoe Co.*, 326 U.S. at 316); *Power Integrations, Inc.*, 547 F. Supp. 2d at 369. Due process is satisfied if the Court finds that "'minimum contacts'" exist between the non-resident defendant and the forum state, "'such that the maintenance of the suit

5

does not offend traditional notions of fair play and substantial justice.'" *Power Integrations, Inc.*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

In this action, however, Plaintiffs assert that a minimum contacts analysis is unnecessary, on the theory that due process is satisfied because Mylan has consented to jurisdiction in Delaware by registering to do business in the State. (D.I. 40 at 7-10) This argument is addressed in detail below.

## III.    DISCUSSION

### A.    Plaintiffs' Argument Regarding Consent to Jurisdiction

Plaintiff argues that this Court has personal jurisdiction over Mylan because Mylan has consented to jurisdiction in Delaware by registering to do business here and by appointing a Delaware agent for service of process, pursuant to 8 Del. C. §§ 371 & 376 (hereinafter, the "Delaware registration statute"). (D.I. 40 at 5-7 (arguing that "[r]esolution of Mylan's motion boils down to [this] single, straightforward issue")) Plaintiffs argue that consent-by-registration was a valid path to establishing personal jurisdiction prior to *Daimler*, and that it remains so thereafter. (*Id.* at 5-10) To that end, Plaintiffs note that the Supreme Court of the State of Delaware has long held that a corporation that authorizes its agent to receive service of process in compliance with the Delaware registration statute has consented to the exercise of personal jurisdiction in Delaware. (*Id.* at 5-6); *see also Sternberg v. O'Neil*, 550 A.2d 1105, 1116 (Del. 1988). Thus, according to Plaintiffs, foreign defendants who register to do business in Delaware

6

are subject to general personal jurisdiction in Delaware courts. (D.I. 40 at 5-6)[2]

For the reasons set forth below, the Court agrees with Plaintiffs.

## B.      Consent to General Jurisdiction

In analyzing this issue, the Court will first address whether, prior to *Daimler*, a foreign

corporation could validly consent to personal jurisdiction through compliance with the terms of a

state registration statute like the one at issue here. After answering this question affirmatively,

the Court will then consider the particular terms of the Delaware registration statute and whether,

in light of Supreme Court precedent pre-*Daimler*, a foreign corporation that complied with those

terms did, in fact, consent to general jurisdiction in the State. After also finding the answer to

that question to be "yes," the Court will then assess whether Mylan in fact complied with the

terms of the Delaware registration statute. And lastly, after finding that Mylan did do so, the

Court will assess whether any part of the Supreme Court's decision in *Daimler* altered the

method of analysis used in a consent-by-registration case like this one.

### 1.      Mylan has Consented to Personal Jurisdiction

#### a.      Supreme Court precedent prior to *Daimler* supports the theory that a foreign corporation may consent to general jurisdiction, and may do so by way of compliance with a state registration statute requiring appointment of an agent for service of process.

In order to more fully address Mylan's arguments regarding *Daimler*, the Court will first

---

[2]      Plaintiffs also assert (and Mylan contests) that the Court has either general or specific jurisdiction over Mylan under several other theories. (*See, e.g.*, D.I. 26 at 2, 10-12; D.I. 40 at 10-19) Because the Court recommends that the Rule 12(b)(2) Motion be denied on the basis of Plaintiffs' consent theory, the Court need not address Plaintiffs' remaining theories of personal jurisdiction.

place them in context. After the enactment of the Fourteenth Amendment, the Supreme Court originally took a "strict territorial approach" to jurisdiction, concluding that a court's "jurisdiction over persons reache[d] no farther than the geographic bounds of the forum." *Daimler*, 134 S. Ct. at 753 (citing *Pennoyer v. Neff*, 95 U.S. 714, 720 (1878)). This approach was adopted by the Supreme Court in *Pennoyer v. Neff*, 95 U.S. 714 (1878), which created a "rigid requirement of either 'consent,' . . . or 'presence[]'" within the forum in order for personal jurisdiction to lie. *Burnham v. Superior Court of California, Cnty. of Marin*, 495 U.S. 604, 617-18 (1990) (Scalia, J.) (plurality opinion); *see also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1064 (3d ed. 2014) (describing how "it became the rule that a person could not be subjected to the jurisdiction of a court unless he actually was served with process within a court's territory or consented to the court's jurisdiction.") (footnotes omitted). In other words, absent consent, a court could not assert jurisdiction other than when a party was physically present within the forum and was served with process in that forum. *Burnham*, 495 U.S. at 619 (Scalia, J.) (plurality opinion).

At the time, this "presence" standard could be easily applied to individuals, but its application to a corporation was more difficult. *See* 16 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 108.23 (2012). Certainly, a domestic corporation was "present" in its state of incorporation. *Id.* But courts also faced the question of how to determine jurisdiction with regard to foreign corporations. *Id.* Some states solved this problem by requiring a foreign corporation to consent to general jurisdiction by the appointment of an agent for the service of process. *Id.* Over time, courts also evolved "fictions" of corporate presence or implied consent

to jurisdiction within a state based on certain contacts that a corporation had with the state, such as when the corporation did business within the state. *Id.* Courts relied upon these fictions when dealing with the question of personal jurisdiction over foreign corporations. *Id.*

The Supreme Court cast aside these fictions in *International Shoe*. *Burnham*, 495 U.S. at 604 (Scalia, J.) (plurality opinion). *International Shoe* explained that due process requires courts to directly tackle the underlying question of whether a defendant, if it is "not present within the territory of the forum," has sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 318 (internal quotation marks and citation omitted).

It is not disputed here that, after *International Shoe*, consent remained a valid basis upon which a Court could obtain personal jurisdiction over a person or corporation, and that a party could consent to personal jurisdiction in a state in a number of ways. The language of the opinion in *International Shoe* itself, for example, makes clear that there, the Supreme Court did *not* intend to abolish the concept that a party could consent to personal jurisdiction. *Int'l Shoe Co.*, 326 U.S. at 317 (discussing, as prelude to the decision, certain circumstances in which a corporation's contacts with the state are deemed to be continuous and systematic, and noting that this discussion related to cases where "no consent to be sued or authorization to an agent to accept service of process has been given"). Instead, in *International Shoe*, the Supreme Court was addressing the "legal fiction" upon which courts had *implied* consent in certain circumstances:

> True, some of the decisions holding the corporation amenable to
> suit have been supported by resort to the legal fiction that it has

9

> given its consent to service and suit, consent being *implied* from its
> presence in the state through the acts of its authorized agents. . . .
> But more realistically it may be said that those authorized acts were
> of such a nature as to justify the fiction.

*Int'l Shoe Co.*, 326 U.S. at 318 (emphasis added); *see also Pennsylvania Fire Ins. Co. of*

*Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93, 95-96 (1917) (distinguishing cases of

actual consent from cases in which "the corporation would be presumed to have assented,"

because in those cases "th[e] consent is a mere fiction").[3]

Indeed, the Supreme Court went on to emphasize in a number of subsequent cases that a

party may consent to personal jurisdiction where such jurisdiction might otherwise not exist.

Among those was *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S.

694, 704 (1982), in which the Supreme Court explained that because "the requirement of

---

[3]     In *Burnham v. Superior Court of California, County of Marin*, 595 U.S. 604
(1990), a plurality opinion authored by Justice Scalia further asserted that *International Shoe* had
not abolished certain additional bases for jurisdiction that had existed prior to the utilization of
the "minimum contacts" test. 495 U.S. at 619. Justice Scalia suggested, for example, that
"presence" as a basis for general jurisdiction survived the court's opinion in *International Shoe*,
stating that it was one of the "traditional notions of fair play and substantial justice" referred to
there:

> The short of the matter is that jurisdiction based on physical
> presence alone constitutes due process because it is one of the
> continuing traditions of our legal system that define the due
> process standard of "traditional notions of fair play and substantial
> justice." That standard was developed by *analogy* to "physical
> presence," and it would be perverse to say it could now be turned
> against that touchstone of jurisdiction.

*Id.* (emphasis in original); *but see Burnham*, 495 U.S. at 629 (Brennan, J.) (plurality opinion)
(applying the minimum contacts analysis set forth in *International Shoe* to the question of
whether a party's presence in the forum is sufficient to show personal jurisdiction over the party
in that forum).

personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."[4] Such waiver can occur were "an individual [to] submit to the jurisdiction of the court by appearance" or via a "variety of legal arrangements [that] have been taken to represent express or implied consent to the personal jurisdiction of the court." *Id.* These "legal arrangements" include where "parties to a contract may agree in advance to submit to the jurisdiction of a given court [or] on the basis of a stipulation entered into by the defendant [or where] such consent [is] implicit in agreements to arbitrate." *Id.* (internal quotation marks and citation omitted). And they also include "state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Id.* As to this last form of consent, it was emphasized that what "'acts of the defendant shall be deemed submission to [a court's] power is a matter upon which States may differ.'" *Id.* (quoting *Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29-30 (1917)).

If it is clear that a party can consent to personal jurisdiction, then the next question becomes whether *one of the ways* in which such consent can be manifested is when a corporation complies with a state registration statute like the one at issue here? On that score, the Court has to conclude that, prior to *International Shoe*, the Supreme Court's answer to this question was

---

[4]     *See also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (recognizing "explicit consent[,]" "[p]resence[,]" and "[c]itizenship or domicile—or, by analogy, incorporation or principal place of business for corporations" as examples of ways that a person or entity may submit to a state's authority, thus "support[ing] exercise of the general jurisdiction of the State's courts"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (noting that there are "a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction" of a state court, such as through the utilization of a forum selection clause in a commercial agreement) (internal quotation marks and citation omitted).

"yes."

For example, in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 94 (1917), the Supreme Court found that a corporation had consented to personal jurisdiction within Missouri by obtaining a license to do business in that State because, in doing so, the corporation had complied with a state statute requiring it to file a form indicating that service of process on a state agency would be deemed personal service upon the company (so long as the company had any outstanding liabilities in the State). Important to the *Pennsylvania Fire* Court's conclusion was that the defendant had "appoint[ed] an agent" for service pursuant to a state statute that, by its terms, "rationally might be held to" apply to any and all lawsuits filed against the defendant (including the instant suit). *Id.* at 95. The Supreme Court noted that a prior Missouri Supreme Court decision had in fact "held [that the Missouri statute at issue went] to that length"—a statutory construction that "did not deprive the defendant of due process of law even if it took the defendant by surprise[.]" *Id.*; *see also King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 573-74 (9th Cir. 2011). Thereafter, in *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.*, 257 U.S. 213 (1921), a case that had originally been dismissed by the district court for "want of jurisdiction over the person of the defendant[,]" the Supreme Court further clarified its holding in *Pennslvania Fire*. 257 U.S. at 215-216. It held that federal courts should look first and foremost to a state's construction of its own statute in order to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation:

> The purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction in respect of business

transacted within the State. *Of course when a foreign corporation appoints one as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court. Pennsylvania Fire*[], 243 U.S. 93[.] But the reasons for a limited interpretation of a compulsory assent are hardly less strong when the assent is expressed by the appointment of an agent than when it is implied from going into business in the State without appointing one. . . . *Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by foreign corporations elsewhere*[.]

*Id.* (emphasis added).[5]

The Supreme Court later reaffirmed the holding of *Pennsylvania Fire* in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939), a decision issued a few years prior to *International Shoe*. In *Neirbo*, the Supreme Court upheld a lower court's decision that, by conforming to a New York State statute that required it to designate an agent for service of process, a defendant corporation had waived the right to contest venue in federal court in New York. 308 U.S. at 167, 175. Within the decision, the *Neirbo* court cited to *Pennsylvania Fire* and stated that the defendant, in complying with the statute, had made a "voluntary act" and given "a real consent" to the effect that "service on the agent shall give jurisdiction of the person." 308 U.S. at 172-75 (also recognizing that "'state legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case.'") (internal quotation marks and citation omitted). *Neirbo*, read along with *Pennsylvania Fire*, *Robert Mitchell* and the other Supreme Court cases that came before it, stood

---

[5]     *Cf. Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (noting that when the law of a state is applied in an action, including law "declared by [a state's] highest court[,]" federal courts follow the state's jurisprudence interpreting that law).

for the proposition that: (1) if a foreign corporation designated an agent for service of process in compliance with a state registration statute of the kind at issue here, and (2) if the statute's text (as further interpreted by the courts of that state) was broad enough to encompass service of process as to the type of lawsuit at issue, then (3) the corporation, by complying with the state statute, had demonstrated actual, voluntary consent to personal jurisdiction in the state's courts with regard to that particular suit. *See King*, 632 F.3d at 573-74.[6]

Mylan, however, contends that the "consent-by-registration approach" set out in these cases "cannot be squared with *International Shoe*, which changed the focus of the jurisdictional inquiry from one based on a defendant's 'physical presence' in the forum State to one based on 'substantial contacts[,]' 'fair play and substantial justice,' and 'fundamental fairness.'" (D.I. 26 at 8) And so the next question becomes: Did *International Shoe* overrule cases like *Pennsylvania Fire* and *Neirbo*? The Court cannot conclude that it did, for a number of reasons.

First, the Supreme Court has never explicitly stated that the holdings in *Pennsylvania Fire* and *Neirbo* were overruled by *International Shoe*. *King*, 632 F.3d at 576 n.6 ("The dissent emphasizes that none of the later [Supreme Court] cases overruled *Pennsylvania Fire*. We

---

[6]     *See also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 44 cmt. c (1971) ("If a corporation has authorized an agent or a public official to accept service of process in actions brought against it in the state, the extent of the authority thereby conferred is a question of interpretation of the instrument in which the consent is expressed and of the statute, if any, in pursuance of which the consent is given. It is a question of interpretation whether the authority extends to all causes of action or is limited to causes of action arising from business done in the state. . . . *By qualifying under one of these statutes, the corporation renders itself subject to whatever suits may be brought against it within the terms of the statutory consent as interpreted by the local courts provided that this interpretation is one that may fairly be drawn from the language of the enactment.*") (emphasis added).

14

agree.") It is well established that courts should be wary in declaring Supreme Court precedent overruled in the absence of an explicit statement by the Supreme Court to that effect. *See Eberhart v. United States*, 546 U.S. 12, 14-15, 19-20 (2005) (noting that it was a "prudent course" for a lower court to apply prior Supreme Court precedent that had not been expressly overruled); *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (urging lower courts to follow Supreme Court precedent that "has direct application in a case").

Mylan nevertheless suggests that in *International Shoe*, the Supreme Court implicitly overruled cases like *Pennsylvania Fire* and *Neirbo*. For support, it points prominently to the decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977). (D.I. 26 at 9)[7] In *Shaffer*, the Supreme

---

[7] Mylan also points in support to a portion of the Supreme Court's decision in *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952). (D.I. 26 at 8-9) Mylan notes that in *Perkins*, a case in which the Supreme Court was analyzing whether a corporation's activity in Ohio was sufficiently continuous and systematic such that the courts of the State had general jurisdiction over it, the Supreme Court noted: "The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test." *Perkins*, 342 U.S. at 445 (quoted in D.I. 26 at 8-9). In the Court's view, however, the meaning of this statement in *Perkins* is less than clear. On the one hand, this statement might be read, as Mylan reads it, as an indication that compliance with a state registration statute of this kind is *per se* insufficient (i.e., "helpful but not conclusive") to subject a corporation to personal jurisdiction. On the other hand, the Supreme Court could simply have meant that consideration of the kinds of in-state "activities" that would typically compel a foreign corporation to register under such a statute would be "helpful but not conclusive" because, while such activities might be robust enough to exceed the legal threshold for jurisdiction, a corporation might also have sufficient in-state activity to exceed that threshold even had it *not* felt compelled to register under such a statute. *See Sternberg*, 550 A.2d at 1111-12. Indeed, it seems unlikely that in the sentence Mylan calls out, *Perkins* was addressing whether compliance with a state registration statute equaled consent to jurisdiction—since in *Perkins*, the defendant corporation at issue had not, in fact, "appointed a statutory agent upon whom service of process [could be made in Ohio] or otherwise consented to service of summons upon it in actions brought in [Ohio.]" *Perkins*, 342 U.S. at 441; *see also Sternberg*, 550 A.2d at 1111-12 (describing *Perkins* as "reaffirm[ing] the principle that there would have been no need to search for minimum contacts . . . if express

15

Court stated that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny"—i.e., via the "minimum contacts" standard. *Shaffer*, 433 U.S. at 212. *Shaffer*, however, addressed the vitality of *quasi in rem* jurisdiction; it did not specifically address the question of consent to personal jurisdiction, nor the concept of general jurisdiction. *Id.* at 212-16; *cf. Burnham*, 495 U.S. 620-21 (Scalia, J.) (concurring opinion) (holding that, when read in context, the statement from *Shaffer* was meant only to indicate that *quasi in rem* jurisdiction "must satisfy the litigation-relatedness requirement of *International Shoe*"). The Court is not convinced that this portion of *Shaffer* was intended to address situations in which a party affirmatively consents to personal jurisdiction. *See Acorda*, 2015 WL 186833, at \*12 n.13 (distinguishing the statement in *Shaffer* because it did not "apply to situations in which a defendant has consented to jurisdiction, or has otherwise waived the requirement of personal jurisdiction"). Moreover, well after *Shaffer*, the Supreme Court again suggested that appointment of an agent for service of process can amount to consent to general jurisdiction. *See Bendix Autolite Corp. v. Midwesco Ents., Inc.*, 486 U.S. 888, 889 (1988) ("To be present in Ohio, a foreign corporation must appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts.").

Second, even after *International Shoe*, the Supreme Court spoke of its decision in *Neirbo* in a way that suggests (at least by analogy) that a corporation's compliance with a state registration statute like that at issue here could amount to a valid form of actual consent to personal jurisdiction in that state. In *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338 (1953)—a

consent had been given").

decision issued eight years after *International Shoe*—the Supreme Court discussed its prior

holding in *Neirbo* in some detail. It explained that in *Neirbo*, the defendant had "designated an

agent in New York" upon whom a summons could be served in that State, and that this

"constituted an '*actual* consent' to be sued in [the federal and state courts of] New York, not the

[l]ess so because it was 'part of the bargain by which [the defendant] enjoys the business freedom

of the State of New York.'" *Id.* at 341-42 (quoting *Neirbo*, 308 U.S. at 175). Although

*Olberding* applied this logic to explain why the defendant had consented to *venue* in a particular

court, *id.*, the Court cannot think of a reason why the same logic would not apply to the question

of what amounts to "actual consent" to personal jurisdiction.[8] That is, if designation of an agent

for service of process pursuant to a state registration statute is the type of affirmative act that can

---

[8]     The Court previously applied the holdings of *Olberding* and *Neirbo* to a case
involving a dispute as to whether defendants had consented to venue in Delaware. In *In re First
Solar, Inc. Derivative Litig.*, Civ. Action No. 12-417-GMS-CJB, 2013 WL 817132, at *3-6 (D.
Del. Mar. 4, 2013), the Court determined that defendants had not consented to venue in Delaware
by virtue of their service as directors of a Delaware corporation, in compliance with the terms of
the Delaware Nonresident Director Consent Statute. The Court noted that in *Neirbo* and
*Olberding*, the Supreme Court had clearly and explicitly drawn a distinction between: "(1) a
person's doing of a voluntary act that is not directly related to the acceptance of service of
process in a state, but that is nevertheless deemed to equate to such acceptance by virtue of the
text of a state statute; and (2) a person's voluntary act of 'actual consent' to being sued in a state,
evidenced by a person's express designation of an agent for service of process." *In re First
Solar*, 2013 WL 817132, at *5. The Court concluded that "[a]ccording to the Supreme Court, the
former cannot operate to waive the federal venue privilege, while the latter can." *Id.* The Court
therefore held that the defendants' compliance with the Delaware statute at issue did not amount
to the voluntary manifestation of "actual consent" to venue, in that the statute did not require the
defendants to affirmatively appoint an agent for service of process in Delaware (instead, the
statute noted that defendants were "deemed to" have appointed such an agent if they otherwise
complied with the statute's terms). *Id.* at *6. The Delaware Nonresident Director Consent
Statute is thus different than the Delaware registration statute at issue here in a manner that the
Supreme Court has deemed crucial—in that compliance with the former does not require a
corporation to expressly appoint such an agent for service of process, while the latter does.

amount to "actual consent" to be sued in a federal court for purposes of the federal venue inquiry, why is it also not the kind of act that amounts to "actual consent" to personal jurisdiction regarding suit in that court? Indeed, in later cases, the Supreme Court has seemed to suggest that it is, and that the two circumstances are equivalent. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979) (citing *Olberding* and *Neirbo* for the proposition that "personal jurisdiction [and] venue . . . are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties"); *cf. Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262-64 (1961) (citing *Olberding* and *Neirbo* as continuing to provide insight on the question of whether a party can submit to or consent to venue).[9]

Third, after *International Shoe*, the majority of federal Circuit courts to consider the question have at least held that compliance with registration statutes like the one at issue here *could* amount to a valid consent to personal jurisdiction, such that due process was satisfied.[10]

---

[9]     In many other post-*International Shoe* cases in which the Supreme Court has cited to *Neirbo*, it has not appeared to question *Neirbo*'s holding in any way. *See Suttle v. Reich Bros. Const. Co.*, 333 U.S. 163, 165 & n.3 (1948) (citing *Neirbo* and noting that it was "conceded by the parties that the Texas corporation, Highways Insurance [a defendant], having qualified to do business in Louisiana [pursuant to a Louisiana statute] is amenable to suit in the federal courts for either the Eastern or Western District of that State."); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506 (1947) (noting that *Neirbo* and the general venue statute "taken together mean only that the defendant may consent to be sued, and it is proper for the federal court to take jurisdiction"), *superseded by statute on other grounds as explained in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994); *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 443-44 (1946) (citing *Neirbo* for the proposition that since consent to suit via the appointment of an agent to receive service "is to suits in the federal courts, it is a consent to suits brought in conformity to the federal regulations govern[ing] the jurisdiction, venue and procedure of those courts.").

[10]     Because this is an issue of personal jurisdiction in patent action, Federal Circuit law will apply to the key disputed issue—whether due process would be offended were the Court to exercise personal jurisdiction over Mylan. *See Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) ("We apply Federal Circuit law to determine whether the district

Three Circuits, including the Third Circuit, have come to this conclusion while finding that the instant claims fell within the scope of the appointed agent's authority under the particular state statute at issue. *See, e.g., Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) (finding that defendant's application for and receipt of authorization to do business in Pennsylvania amounted to "consent to be sued in Pennsylvania courts[,]" where the state statute at issue required the defendant to designate the Secretary of the Commonwealth as its agent for service of process "in any action against it") (internal quotation marks and citation omitted);[11] *Knowlton v. Allied Van Lines Inc.*, 900 F.2d 1196, 1199-1200 (8th Cir. 1990) (concluding that "appointment of an agent for service of process under [a Minnesota state statute] gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state" based on the statute's text and the Supreme Court of Minnesota's interpretation of the statute); *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984) (upholding statutory consent to personal jurisdiction via compliance with a New Hampshire statute, based on a "natural reading" of that statute, and noting that it "is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state

court properly exercised personal jurisdiction over out-of-state defendants in patent infringement cases."); *Acorda*, 2015 WL 186833 at *9; *see also* (Tr. at 25-26). Because the Federal Circuit has not yet addressed the constitutionality of treating registration to do business in a state as consent to the jurisdiction of courts in that state, *see Acorda*, 2015 WL 186833 at *9, the Court looks to decisions of other federal courts for guidance.

[11] The Pennsylvania statute at issue in *Bane* was particularly explicit about the effect that compliance would have on the question of personal jurisdiction. The statute stated that if a corporation qualified as a "foreign corporation under the laws of [the State]" then this "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person[.]" *Bane*, 925 F.2d at 640 (internal quotation marks and citations omitted).

statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority"). Two other Circuits appear to have come to the same conclusion, but have gone on to analyze state court precedent and ultimately determine that consent had not been granted in the instant cases, since the scope of the particular state registration statutes at issue was not broad enough to cover the type of legal claims implicated in the case. *See King*, 632 F.3d at 576, 578 (finding, after reviewing relevant state court precedent, that a defendant corporation's compliance with a Montana registration statute did not amount to consent to jurisdiction in Montana courts, in a case where the defendant's acts were performed outside of Montana and where the corporation transacted no business in the state); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 180-81 (5th Cir. 1992) (holding that the defendant's appointment of an agent for service of process pursuant to a Texas state statute did not amount to consent to personal jurisdiction in Texas "on any dispute with any party anywhere concerning any matter" because "[n]o Texas state court decision has held that this provision acts as a consent to jurisdiction over a corporation in a case such as ours—that is where plaintiffs are non-residents and the defendant is not conducting substantial activity within the state").

As far as the Court is aware, only three Circuits have flatly held that compliance with a state registration statute of the kind at issue here cannot, under any circumstances, be the basis for finding consent to general jurisdiction. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (holding that appointment of an agent for service of process is insufficient to subject a corporation to general personal jurisdiction under *International Shoe*); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) ("Registering to do

business is a necessary precursor to engaging in business activities in the forum state. However, it cannot satisfy . . . standing alone . . . the demands of due process. Such an interpretation of the Indiana registration statute would render it constitutionally suspect. . . ."); *Ratliff v. Cooper Labs. Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("The principles of due process require a firmer foundation than mere compliance with state domestication statutes."). However, none of those opinions directly address the issue of consent—i.e., why compliance with such a statute could not, under any circumstances, amount to the kind of consent to jurisdiction referenced in *Pennsylvania Fire*, *Robert Mitchell*, and *Neirbo*.

Fourth, it is significant to the Court that, at least prior to *Daimler* and to Mylan's recent challenges, our Court had consistently and repeatedly held, post-*International Shoe*, that consent-by-registration could still be a valid path to personal jurisdiction. *See Cont'l Cas. Co. v. Am. Home Assur. Co.*, 61 F. Supp. 2d 128, 129-30 (D. Del. 1999); *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1039 (D. Del. 1974). Indeed, in *Continental Casualty Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 129-30 (D. Del. 1999) our Court specifically cited to *Pennsylvania Fire* in support of its decision in this regard.

For all of these reasons, the Court concludes that, even after *International Shoe*, a corporation could validly consent to personal jurisdiction in a state's courts by complying with a state registration statute requiring designation of an agent for service of process—with the scope of that consent restricted to the types of cases for which the state statute required that an agent be so designated.

> **b. The terms of the Delaware registration statute have been interpreted to mean that when a corporation complies with the**

**statute, it consents to personal jurisdiction for all actions
brought against it in Delaware.**

The Court next looks to the Delaware registration statute at issue here—the statute on

which Plaintiffs' consent argument rests. Section 376 of that statute states that:

> (a) All process issued out of any court of this State, all orders made
> by any court of this State, all rules and notices of any kind required
> to be served on any foreign corporation which has qualified to do
> business in this State may be served on the registered agent of the
> corporation designated in accordance with § 371 of this title, or, if
> there be no such agent, then on any officer, director or other agent
> of the corporation then in this State.

8 Del. C. § 376. In turn, Section 371 of the statute, which is entitled in part "qualification to do

business in State[,]" relates:

> (b) No foreign corporation shall do any business in this State . . .
> until it shall have paid the Secretary of State of this State for the use
> of this State, $80, and shall have filed in the office of the Secretary
> of State:
> . . .
> A statement . . . setting forth (i) the name and address of its
> registered agent in this State . . . .

8 Del. C. § 371.[12]

Neither Section 371 nor Section 376 of the Delaware registration statute expressly sets

out the types of actions for which registration of an agent for service of process shall be effective.

However, in *Sternberg v. O'Neil*, 550 A.2d 1105, 1115 (Del. 1988) the Supreme Court of

---

[12]      A corporation that does not qualify pursuant to the Delaware registration statute,
but nevertheless transacts business in Delaware, will not have the validity of its acts and
contracts impaired, and it is not prevented from fully defending an action in the State. *Sternberg*,
550 A.2d at 1114 (citing 8 Del. Code § 383). A non-registered corporation may not maintain a
legal action in Delaware until is has complied, *id.*; *see also* (Tr. at 40), and could be subject to
other statutory penalties, *see* 8 Del. Code §§ 378 & 384.

Delaware addressed just that issue. The *Sternberg* Court adopted the view of this Court in

*D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034 (D. Del. 1974), which had addressed the

scope of Section 376 in this way:

> Section 376 does not in [its] terms limit the amenability to service
> of a qualified foreign corporation to one which does business in
> Delaware or with respect to a cause of action arising in Delaware.
> By the generality of its terms, a foreign corporation qualified in
> Delaware is subject to service of process in Delaware on any
> transitory cause of action.

*Id.* (quoting *D'Angelo*, 378 F. Supp. at 1039) (alteration in original). Thus, by qualifying as a

foreign corporation in Delaware, a foreign corporation "could be *served* and *sued* in Delaware on

a transitory cause of action." *Id.* (emphasis in original).

The *Sternberg* Court also compared Sections 371 and 376 with Section 382 of the

Delaware registration statute, which applies to non-qualified foreign corporations. *Id.* at 1115-

16. The Delaware Supreme Court characterized Section 382 as a "long arm" statute, which

relied on a corporation's "implied consent" to personal jurisdiction; there, the corporation, by

"transacting business in Delaware" was said to "implicitly consent to Delaware's jurisdiction[.]"

*Id.* at 1115-16. In contrast, the *Sternberg* Court, citing to *Pennsylvania Fire* and *Neirbo*,

explained that when a foreign corporation appoints a statutory agent for service of process

pursuant to Section 376, this amounts to "[e]xpress consent to jurisdiction" that applies to "any

action that is within the scope of the agent's authority[.]" *Id.* at 1116. And then the *Sternberg*

Court again confirmed that there "are no [such] limitations" to the scope of that authority listed

in Section 376. *Id.*

For all of these reasons, the *Sternberg* Court concluded that "when [defendant

23

corporation] qualified as a foreign corporation, pursuant to 8 Del. C. § 371, and appointed a

registered agent for service of process, pursuant to 8 Del. C. § 376, [it] consented to the exercise

of general jurisdiction by the Courts of Delaware." *Id.* at 1116. In so doing, the Delaware

Supreme Court noted the same statement in *Shaffer* that Mylan relies on here: that "'all

assertions of state court jurisdiction must be evaluated according to the standards set forth in

*International Shoe* and its progeny.'" *Sternberg*, 550 A.2d at 1116 (quoting *Shaffer*, 433 U.S. at

212). The *Sternberg* Court ultimately concluded that the statement from *Shaffer*, "read in

context, . . . stands for the proposition that *all assertions* of state court jurisdiction *based upon*

*legal fictions* must be evaluated according to the standards set forth in *International Shoe.*" *Id.* at

1116 (emphasis in original). And since the corporation in the case before it had expressly

consented to jurisdiction by virtue of its compliance with the Delaware registration statute,

*Sternberg* "conclud[ed]" that "a minimum contact analysis is not required[.]" *Id.* at 1116-17.[13]

The Court is not aware of, nor have the parties cited to, any Delaware state court decision

---

[13]     Mylan suggests that the *Sternberg* Court "expressed doubt" about its decision as
to consent-by-registration because, in a later part of the opinion, the Court went on to examine
the defendant's claim according to the "minimum contacts" analysis set out in *International
Shoe*. (D.I. 26 at 9 n.6; *see also* D.I. 48 at 2) To the extent that Mylan suggests that *Sternberg's*
holding regarding the consent issue was anything other than clear and definitive, the Court
disagrees. The *Sternberg* Court made its view plain that "a minimum contact analysis is not
required" due to that Court's "find[ing]" that the defendant "consented to the exercise of general
jurisdiction by the Courts of Delaware." *Sternberg*, 550 A.2d at 1116-17. This clear, emphatic
language allows for no plausible argument that the *Sternberg* Court was uncertain as to its
decision on this point. Read in context, then, *Sternberg's* further analysis of whether the
corporation at issue was subject to personal jurisdiction in Delaware based on the principles set
out in *International Shoe* is simply an example of a court noting that its decision would be
justified on more than one basis—not an admission that the first of those two bases was legally
suspect. *Id.* at 1124-26 (explaining that its decision that personal jurisdiction existed based on a
minimum contacts analysis was an "independent and alternative basis" for the decision).

after *Sternberg* that questions *Sternberg*'s holding in this regard.[14] And after *Sternberg*, our Court affirmatively relied upon *Sternberg*'s consent-related holding. In *Continental Casualty Co. v. American Home Assurance Co.*, our Court cited to *Sternberg* in ruling that a foreign corporation that authorizes an agent to receive service of process in compliance with the Delaware registration statute has consented to the exercise of personal jurisdiction here—even as to actions not arising from events or transactions occurring in the State. 61 F. Supp. 2d at 129-30 & n.3.

Therefore, the scope of Delaware's registration statute is such that when a foreign corporation complies with its terms, including appointing an agent for service of process in the State, this amounts to the kind of actual, express consent to personal jurisdiction described in *Pennsylvania Fire* and *Neirbo*. It is a consent applicable to any cause of action, not simply one where the foreign corporation acts in the State of Delaware.

### c. Mylan complied with the Delaware registration statute.

The next question is: Did Mylan comply with the Delaware registration statute by the time the instant cause of action arose and suit was filed? Here there is no dispute that it did. Mylan has been qualified to do business in Delaware since at least April 2010, when it complied with the Delaware registration statute and, *inter alia*, affirmatively appointed a registered agent in Delaware to accept service of process. (D.I. 1 at ¶ 18; D.I. 26 at 6; D.I. 40 at 6; D.I. 43, ex. N)

---

[14]     *Cf. Macklowe v. Planet Hollywood, Inc.*, Civ. A. No. 13689, 1994 WL 586838, at \*4 (Del. Ch. Oct. 13, 1994) (citing *Sternberg* for the proposition that "[i]t is *undisputed* [that] a foreign corporation's appointment of a statutory agent to receive service of process pursuant to a statute is an express consent to general jurisdiction.") (emphasis added).

The scope of this agent's authority thus encompassed all legal actions, including this patent infringement dispute.

Although Mylan does not contest that it complied with the Delaware registration statute, it does suggest that mere compliance is not sufficient to quell due process concerns. Mylan argues that even if it was "*possible* for the mere act of registering to transact business in a State to confer general jurisdiction, the *Sternberg* court's interpretation of the Delaware registration statute is unconstitutional." (D.I. 48 at 3) Mylan seems to suggest that, in order to provide sufficient notice for due process purposes, the registration statute at issue must explicitly provide *in its text* that, in complying, a corporation will have consented to personal jurisdiction in all cases. Otherwise, Mylan asserts, a complying corporation would not have insufficient "notice" of the "consequences flowing from the decision to register[.]" (*Id.*)

Yet *Sternberg* issued in 1988, 22 years prior to Mylan's April 2010 registration. *Sternberg*, 550 A.2d at 1115. And decades beforehand, the Supreme Court had repeatedly made it clear exactly where a corporation like Mylan should look to obtain "notice" as to the impact such registration could have on questions of personal jurisdiction—to both the registration statute's text, *and* to the interpretation given to that text by the State's highest court. *Robert Mitchell*, 257 U.S. at 216; *King*, 632 F.3d at 575 ("*Robert Mitchell* thus confirms that federal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation."). Thus, when Mylan was considering whether to comply with the Delaware registration statute in 2010, it could not have been taken by

surprise. In at least such a circumstance, the Court cannot see how maintenance of the suit would offend traditional notions of fair play and substantial justice on "notice" grounds. *See Acorda*, 2015 WL 186833, at *11; *cf. Rockefeller Univ. v. Ligand Pharms.*, 581 F. Supp.2d 461, 466 (S.D.N.Y. 2008).

### d. *Daimler* did not change the law regarding consent to general jurisdiction.

Taking all of the above into account, the last question for the Court is whether the Supreme Court's decision in *Daimler* changed the legal landscape here. Mylan suggests that to the extent that consent-by-registration remained a valid path to personal jurisdiction prior to *Daimler*, the decision in *Daimler* shut that door. The Court disagrees.

*Daimler* involved a dispute over whether the United States District Court for the Northern District of California ("Northern District") could exercise personal jurisdiction over DaimlerChrysler Aktiengesellschaft ("Daimler"), a German car manufacturer. *Daimler*, 134 S. Ct. at 750-51. The plaintiffs were 22 Argentineans who had filed a complaint in the Northern District. *Id*. at 750-51. With their Complaint, plaintiffs sought to hold Daimler vicariously liable for the acts of its Argentinean subsidiary, Mercedes-Benz Argentina ("MB Argentina"). *Id*. MB Argentina was alleged to have collaborated with Argentinean state security forces from 1976 through 1983 to violate the plaintiffs' rights; the Complaint brought claims in that regard under the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991, 106 Stat. 73, note following 28 U.S.C. § 1350, as well as claims for wrongful death and intentional infliction of emotional distress under California and Argentine law. *Id*. No acts relating to the claims had occurred in California, nor was there any connection between the perpetrators or the

27

victims to that State. *Id.* at 751-52.

In *Daimler*, the Supreme Court unanimously determined that the case should be dismissed for lack of personal jurisdiction. *Id.* at 763. In doing so, it rejected plaintiffs' argument that the California court could exercise general jurisdiction over Daimler as a result of the California-based contacts of Daimler's alleged agent, Mercedes-Benz USA, LLC ("MBUSA"). *Id.* at 752. Although MBUSA's principal place of business was in New Jersey, it had multiple California-based facilities, it was the largest supplier of luxury vehicles to the California market, and MBUSA's sales in California accounted for 2.4% of Daimler's worldwide sales. *Id.*

As part of its decision, the *Daimler* Court held that even were it to assume that MBUSA's contacts could be attributed to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, because Daimler's "slim contacts" with the State did not render it "essentially at home" there. *Id.* at 760, 763 (internal quotation marks and citation omitted). It explained that in all but the most exceptional circumstances, a corporation is "at home" in two places: the place of its incorporation and its principal place of business. *Id.* at 760-62. The Supreme Court noted that since neither Daimler nor MBUSA was incorporated in California, nor did either entity have its principal place of business there, general jurisdiction did not lie. *Id.* at 761. The *Daimler* Court reasoned that "[i]f Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in in every other State in which MBUSA's sales are sizable"; it held that such "exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to

structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (quoting *Burger King Corp.*, 471 U.S. at 472).

Mylan asserts that *Daimler* eliminated the viability of consent via corporate registration as set out in early Supreme Court cases and in *Sternberg*. Indeed, Mylan claims that *Daimler* stands for the broad proposition that consent, standing alone, may never be a sufficient basis on which to subject a party to general jurisdiction in the courts of a State. (Tr. at 16-17)

Yet Mylan concedes, as it must, that at no point in *Daimler* does the Supreme Court ever state that it is intending therein to overrule cases like *Pennsylvania Fire, Robert Mitchell* or *Neirbo*. (Tr. at 81-82) Indeed, the *Daimler* Court never mentions those prior cases at all.

Moreover, in the entire *Daimler* opinion, the concept of consent to jurisdiction is mentioned just one time—and then in a way that hurts, not helps, Mylan's argument. Early in the decision, the *Daimler* Court refers to (and relies on) *Perkins v. Benguet Consol. Mining Co.* as "the textbook case *of general jurisdiction* appropriately exercised over a foreign corporation that *has not consented to suit in the forum*." *Daimler*, 134 S. Ct. at 755-56 (internal quotation marks and citation omitted) (emphasis added). In other words, in the one instance in which *Daimler* mentions consent to jurisdiction—in the context of a discussion regarding general jurisdiction—it does so to *distinguish* the concept of consent from the circumstances relevant to its decision. In sum, it is difficult for the Court to read *Daimler* as overruling nearly century-old Supreme Court precedent regarding what amounts to voluntary consent to jurisdiction when: (1) *Daimler* never says it is doing any such thing; and (2) what *Daimler* does say about consent to

jurisdiction suggests just the opposite.[15]

Additionally, as to Mylan's argument that a corporation could never consent to general jurisdiction, the Court does not understand why that is so. For example, why could a corporation not agree with a competitor, as part of a settlement agreement in which it obtained something of value in return, that it would not contest personal jurisdiction in a state as to any future claims that the competitor later brings in the state's courts as to any subject matter? And why could a corporation not, if it wished, agree not to contest personal jurisdiction in many states, not just one? At oral argument, when pressed on this issue, Mylan appeared to waiver on its position that a party could never, under any circumstances, consent to general jurisdiction. Its counsel conceded that this kind of consent-by-contract to general jurisdiction would, in fact, be effective. (Tr. at 21-22) But Mylan's counsel then went on to contrast this form of "knowing" consent with the type of consent evidenced through compliance with the Delaware registration statute, which Mylan's counsel portrayed as "different" and insufficient. (*Id.* at 22)

Of course, it is true that consent-by-registration is a "different" kind of consent than consent manifested through a private contract with another party. The former is a unique circumstance: (1) it involves a corporation's interaction not with another party, but with the state; (2) it is one where consent is conveyed not by contract, but by compliance with the terms of

---

[15]     Indeed, perhaps for this reason, the United States Court of Appeals for the Second Circuit has suggested, post-*Daimler*, that a district court should consider whether a party has consented to personal jurisdiction in New York by applying for authorization to do business in New York and thus designating the New York Secretary of State as its agent for service of process. *See Gucci Am., Inc., v. Weixing Li*, 768 F.3d 122, 136 n.15 (2d Cir. 2014); *Tiffany (NJ) LLC v. China Merchants Bank*, 589 F. App'x 550, 553 (2d Cir. 2014).

a statute; and (3) it is one where a corporation submits to general jurisdiction in return for the opportunity to do business in a state. Nevertheless, according to longstanding Supreme Court precedent, it is a valid form of "real consent" to personal jurisdiction—one just as valid as consent by contract. And so any differences in the *form* of consent should not make a difference in the outcome here.

Mylan's best argument is that it is registered to transact business in 21 other states, and that if "registration alone made Mylan 'at home' in Delaware, then it would also be 'at home' in a whole host of other States[,]" a result that "*Daimler* addressed and rejected." (D.I. 26 at 6; *see also* Tr. at 13) And indeed, it might be the case that if other courts adopted the rationale of the Court's decision here, Mylan could be subject to personal jurisdiction in many states around the country (as to at least certain legal actions).

But in the Court's view, this line of argument ignores the different and unique role that consent plays in the personal jurisdiction analysis. The Court's decision does not suggest that Mylan is "essentially at home" in Delaware. Mylan is "at home" for jurisdictional purposes in one State (and, most likely, one State only): the State of West Virginia, where it is incorporated and where it has its principal place of business. But even if it is at home in only one State, surely Mylan can freely agree to be subject to personal jurisdiction in other states—so long as that consent is knowing and voluntary in the eyes of the law.

Moreover, unlike the circumstance addressed in *Daimler*, finding in Plaintiffs' favor here would not hinder the ability of out-of-state defendants like Mylan "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them

31

liable to suit." *Daimler*, 134 S. Ct. at 761-62 (internal quotation marks and citation omitted).

Prior to the Supreme Court's decision, Daimler might well have had real uncertainty as to whether the extent of its facilities and its business activity in California were such that a court would deem it subject to general jurisdiction in that State. In contrast, in April 2010, Mylan should have had far more than a "minimum assurance" as to the import of its actions when it decided to comply with the Delaware registration statute. At that time, Mylan *did* have the ability to knowingly structure its conduct in a way that either would, or would not, result in the loss of its ability to contest personal jurisdiction in Delaware.

### 2. Other recent cases in this District

As noted above, the Court recognizes that since *Daimler*, our Court has twice weighed in on this consent-to-jurisdiction issue. In *AstraZeneca AB*, Judge Sleet concluded that Mylan's compliance with Delaware's registration statute did not constitute consent to personal jurisdiction in the State's courts, and that the Delaware Supreme Court's decision in *Sternberg* could no longer be said to comport with federal due process. *AstraZeneca AB*, 2014 WL 5778016, at *4-5. In *Acorda*, Chief Judge Stark came to the opposition conclusion. *Acorda*, 2015 WL 186833, at *14. For the reasons set out above, which address various points made by these Judges in both cases, the Court agrees with the result in *Acorda*, and respectfully declines to follow the holding in *AstraZeneca AB*.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Rule 12(b)(2) Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: February 26, 2015

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE